1  **WO**

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 9  Kelly Brian Peacock, | No. CV-17-00523-PHX-BSB |
| 10  Plaintiff, | **ORDER** |
| 11  v. | |
| 12  Commissioner of Social Security Administration, | |
| 13 | |
| 14  Defendant. | |

Plaintiff Kelly Brian Peacock seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for benefits under the Social Security Act ("the Act"). The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), and have filed briefs in accordance with Rule 16.1 of the Local Rules of Civil Procedure. As discussed below, the Court reverses the Commissioner's decision and remands for further proceedings.

**I.  Procedural Background**

In July 2013, Plaintiff filed an application for supplemental security income benefits ("SSI"). (Tr. 16.)[1] After the Social Security Administration denied Plaintiff's initial application and his request for reconsideration, he requested a hearing before an administrative law judge ("ALJ"). (*Id.*) After conducting two hearings, the ALJ issued a decision finding Plaintiff not disabled under the Act. (Tr. 16-26.) This decision became

---

[1] Citations to Tr. are to the certified administrative transcript of record. (Doc. 8.)

the final decision of the Commissioner when the Social Security Administration Appeals Council denied Plaintiff's request for review. (Tr. 1-4); *see also* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council). Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## II. Administrative Record

The administrative record includes medical records pertaining to the history of diagnoses and treatment related to Plaintiff's alleged impairments of degenerative disc disease of the lumbar and cervical spine. (Tr. 27.) The record also includes several medical opinions. The Court discusses the relevant evidence below.

### A. Medical Treatment Evidence

The ALJ noted that Plaintiff had "a significant history of back problems." (Tr. 19.) The record reflects that after experiencing right-sided hand weakness, radicular pain, and numbness, Plaintiff had an MRI on October 12, 2012. (Tr. 364, 367, 426-27.) The MRI showed large C7-T1 right-sided disc fragments in the neural foramen. (Tr. 364, 367, 426-27.) Peter Nakaji, M.D., assessed "radiculopathy secondary to herniated disc, significant numbness and weakness in dominant hand." (Tr. 367.) Based on that assessment, on October 27, 2012, Dr. Nakaji performed an anterior cervical discectomy, fusion, and plating at C7-T1 on Plaintiff. (Tr. 364-65.) Plaintiff's symptoms improved after surgery, but returned in February 2013. (Tr. 376-79 (reporting improvement after surgery), Tr. 393 (Feb. 12, 2013 cervical spine x-ray showing degenerative disc disease at C4-C5 and C5-C6), Tr. 395 (February 2013 MRI report noting "new upper extremity pain and numbness"), Tr. 483 (noting sudden onset of pain in February 2013).) On February 12, 2013, an MRI of Plaintiff's cervical spine showed a large C6-C7 central disc extrusion with deformity of the spinal cord, but without foraminal compromise. (Tr. 395-96.) In July 2013, an MRI of Plaintiff's lumbar spine showed moderate L5-S1 degenerative disc disease. (Tr. at 442-43.) Plaintiff consistently reported pain and

1    headaches related to these conditions.  (Tr. 407-09, 415-17, 434-36, 473-76, 482-83, 486-
2    89, 491-92, 494, 496, 500.)[2]

3         **B.     Medical Opinion Evidence**

4              **1.     Leo Kahn, M.D., P.C.**

5         On March 23, 2015, at the request of Plaintiff's attorney, Dr. Leo Kahn examined
6    Plaintiff and offered opinions about Plaintiff's physical functional limitations.  (Tr. 541-
7    47.)  Dr. Kahn took a medical report from Plaintiff, examined Plaintiff, reviewed his
8    medical records, and opined as to Plaintiff's physical limitations.  (*Id*.)  Plaintiff reported
9    to Dr. Kahn that he was experiencing headaches three-to-four times a week that were
10   primarily triggered by "head positioning" and that lasted about four to six hours.
11   (Tr. 541.)  Plaintiff stated that maintaining his head in a "position of extension" triggered
12   a headache.  (*Id*.)  Plaintiff described the headache as "a pressure sensation" that made
13   him sensitive to light and noise.  (*Id*.)  Plaintiff said the best treatment for his headaches
14   was to "be in a quiet dark room" and to "try to sleep."  (*Id*.)

15        With respect to his neck, Plaintiff reported that before undergoing C7-TI fusion,
16   he had severe right arm pain and neck pain.  (*Id*.)  He stated that after surgery his right
17   arm pain mostly subsided, but he had some "residual right hand numbness."  (*Id*.)
18   Plaintiff reported that surgery initially relieved his neck pain, but intense pain returned
19   about two weeks after surgery.  (*Id*.)  Plaintiff reported ongoing numbness in his right
20   hand, some pain in his trapezius, and that most of his pain was in the "paracervical
21   areas."  (Tr. 542.)  Plaintiff did not report symptoms in his left upper extremity or in his
22   lower extremities.  (*Id*.)  Plaintiff stated that he had recently completed a series of
23   injections but they did not reduce his "neck discomfort."  (*Id*.)  Plaintiff reported low
24   back pain that could be severe.  (*Id*.)  Plaintiff stated that he could not work "secondary to
25   headaches as well as neck pain."  (*Id*.)

26        Dr. Kahn examined Plaintiff's neck and noted that "flexion [was] approximately
27   three finger breadths above the sternum.  Extension [was] to approximately 25 degrees.

28   _____
     [2]  The citation to medical records showing pain and headaches is not exhaustive.  The
     administrative record includes additional medical records.  (Doc. 8.)

- 3 -

Left lateral rotation [was] to about 70 degrees." (Tr. 543.)  Dr. Kahn noted that Plaintiff could rotate his neck to the right laterally about 45 degrees, but reported pain with lateral right rotation.  (*Id.*)  Plaintiff had a full range of motion in both shoulders and normal strength in all four extremities.  (*Id.*)  Dr. Kahn observed that Plaintiff was "very slightly clumsy with rapid alternating movements involving the upper right extremity as compared to the left."  (*Id.*)  Straight-leg raising was negative bilaterally.  (*Id.*)  Plaintiff had a normal gait.  (*Id.*)  Plaintiff reported tenderness to palpation of his lower lumbar region.  (*Id.*)  Dr. Kahn found that Plaintiff's reports of headaches were credible. (Tr. 547.)  He did not consider the headaches "classic migraine headaches, but rather cervicogenic headache secondary to underlying cervical spine condition."  (*Id.*)

Based on Plaintiff's "persistent cervical spine condition as well as the headaches," Dr. Kahn opined that Plaintiff could lift ten pounds frequently and up to twenty pounds occasionally.  (Tr. 547.)  Dr. Kahn found that Plaintiff "should not work above shoulder height, i.e. he should not . . . work with his neck in extension."  (*Id.*)  Dr. Kahn opined that Plaintiff should not "be required to maintain his neck in any one fixed position for more than a couple of minutes."  (*Id.*)  Additionally, Plaintiff was limited with regard to fine motor skills and could only do "crude activity with his right hand."  (*Id.*)  Dr. Kahn opined that "[b]ased on the reported severity of [Plaintiff's] headaches, it would not be expected that he could possibly be unable to work anywhere from one to three days per month."  (*Id.*)

On June 29, 2015, Dr. Kahn offered a supplemental opinion after he reviewed a consultative evaluation of Plaintiff performed by Dr. Keith Cunningham.[3]  (Tr. 569.) Dr. Kahn reiterated that he "did not believe that [Plaintiff] should maintain his neck in any one fixed position for more than a couple of minutes."  (*Id.*)  He also stated that Plaintiff could "only carry out what would be considered non-fine motor skills with the right hand."  (*Id.*)  Dr. Kahn opined that there was an "organic basis" for Plaintiff's headaches "related to the previous cervical spine fusion as well as the chronic

---

[3]  Dr. Cunningham's consultative evaluation of Plaintiff, performed on May 12, 2015, is described below in Section II.B.2.

degenerative spondylosis." (*Id*.) He concluded that Plaintiff had consistently reported headaches and that it was "reasonable to conclude that [he] would be absent from work one to three times per month secondary to headaches." (*Id*.)

### 2. Keith Cunningham, M.D.

After the initial April 1, 2015 administrative hearing, the ALJ referred Plaintiff for a consultative examination that Dr. Cunningham performed on May 12, 2015. (Tr. 558-567.) The notes from that examination do not indicate that Dr. Cunningham reviewed any medical records. (*Id*.) During the examination, Plaintiff reported that he tried to return to work following a cervical discectomy, but he had continued neck pain accompanied by stiffness and headaches. (Tr. 558.) Plaintiff reported continuing pain and headaches over the previous three years. (*Id*.) Plaintiff stated that he was treated at Maricopa County Hospital and that, after he had an MRI in April 2015, Dr. Feiz-Erfan recommended "conservative treatment." (*Id*.) Plaintiff said that he experienced "pain and grinding" when he turned his neck or did any heavy lifting. (*Id*.) Plaintiff described his other symptoms as numbness of his right palm and groin pain. (*Id*.) Plaintiff reported that he did not use an assistive device and was independent in his activities of daily living. (*Id*.)

On examination, Dr. Cunningham reported that Plaintiff's neck had "30 degrees of forward flexion, 20 degrees of extension, [and] 70 degrees left and right lateral rotation." (Tr. 559.) "There [was] audible cracking heard when turning the neck." (*Id*.) Dr. Cunningham observed that Plaintiff's "back otherwise demonstrate[d] normal lumbar range of motion." (*Id*.) Plaintiff had normal range of motion in his shoulders, elbows, wrists, fingers and thumbs. (*Id*.) Plaintiff's "hips, knees and ankles moved normally." (*Id*.) "Strength testing was normal throughout." (*Id*.) Plaintiff had "slight decreased sensation to touch in the right palm," but otherwise intact sensation. (*Id*.) Dr. Cunningham assessed "[s]taus post cervical spine surgery with limited range of motion with sensory deficits of the right palm which were minimal on exam[ination]."

1 (Tr. 560.) Dr. Cunningham also assessed "[r]ight groin pain without abnormality noted,"

2 and hypertension. (*Id*.)

3 Dr. Cunningham completed a "Medical Source Statement of Ability to do Work-

4 Related Activities (Physical)." (Tr. 560-66.) He opined that Plaintiff could lift or carry

5 up to ten pounds continually, eleven to twenty pounds frequently, and twenty-one to fifty

6 pounds occasionally. (Tr. 561.) He opined that Plaintiff could sit, stand, or walk up to

7 two hours at a time for a total of eight hours in an eight-hour workday. (Tr. 561-62.)

8 Dr. Cunningham opined that, with either hand, Plaintiff could occasionally reach

9 overhead and could reach in all other directions continuously. (Tr. 562.) He opined that

10 Plaintiff could continuously handle, finger, feel, push, and pull. (Tr. 562-63.)

11 Dr. Cunningham further found that Plaintiff could use his feet continuously. (Tr. 563.)

12 Dr. Cunningham opined that Plaintiff could never climb ladders or scaffolds, could

13 occasionally stoop and crawl, could frequently climb ramps and stairs and frequently

14 crouch, and could continuously balance and kneel. (*Id.*) Dr. Cunningham also assessed

15 several environmental limitations and found that Plaintiff could perform activities of

16 daily living. (Tr. 565.)

17 **III.    The Administrative Hearings**

18 Plaintiff was forty-five years old when he applied for SSI. (Tr. 24.) He had a high

19 school education. (Tr. 57.) Plaintiff had past relevant work as a janitor, delivery truck

20 driver, and a power washer. (*Id*.) At the first administrative hearing in April 2015,

21 Plaintiff testified that following cervical surgery he continued to have numbness and pain

22 in his right hand. (Tr. 56.) Plaintiff testified that he experienced pounding headaches

23 that made him sensitive to light and sound and that if he got into an "unusual posture"

24 such as "look[ing] under the table . . . [he] would get a migraine." (*Id*.) Plaintiff stated

25 that he had headaches once or twice a week that lasted for four to five hours during which

26 time he would lay down in the dark with no sound. (*Id*. at 56-57.) After Plaintiff

27 testified, the ALJ ordered a consultative examination and permitted Plaintiff's counsel to

28 identify up to fifty pages of the medical record, including Dr. Kahn's report, to be

1  reviewed as part of the evaluation. (*Id*. at 62.) Plaintiff states that there is no evidence

2  that his records were provided to the examiner, Dr. Cunningham. (Doc. 11 at 10.)

3      At the second administrative hearing in November 2015, Plaintiff testified that he

4  still had headaches once or twice a week that lasted for three to four hours. (Tr. 77.)

5  Plaintiff testified that if he "look[ed] a certain way, like not straight on or not level, and

6  [held his head] there for any amount of time, even just a few seconds," he could

7  "sometimes" get a "migraine." (Tr. 78.) A vocational expert also testified at the second

8  hearing. The vocational expert testified that an individual with the functional limitations

9  that Dr. Cunningham identified could not perform Plaintiff's past relevant work, but

10 could perform other jobs such as cashier, routing clerk, office helper, document scanner,

11 ticket checker, and call out operator. (Tr. 83-86.) The vocational expert testified that a

12 person could not maintain employment in those jobs if that person would regularly miss

13 more than one day of work per month. (Tr. 86.) The vocational expert also testified that

14 an individual limited to maintaining a fixed head position, a limitation that Dr. Khan

15 assessed, would be unable to sustain employment in any of the jobs identified. (Tr. 89.)

16 The vocational expert further testified that an inability to perform fine manipulation

17 would preclude employment in the identified jobs. (Tr. 87-89.)

18 **IV.   The ALJ's Decision**

19     A claimant is considered disabled under the Act if he is unable "to engage in any

20 substantial gainful activity by reason of any medically determinable physical or mental

21 impairment which can be expected to result in death or which has lasted or can be

22 expected to last for a continuous period of not less than 12 months."

23 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard

24 for supplemental security income disability insurance benefits). To determine whether a

25 claimant is disabled, the ALJ uses a five-step sequential evaluation process.

26 *See* 20 C.F.R. §§ 404.1520, 416.920.

27 ///

28 ///

### A. The Five-Step Sequential Evaluation Process

In the first two steps, a claimant seeking disability benefits must demonstrate (1) that he is not presently engaged in a substantial gainful activity, and (2) that his medically determinable impairment or combinations of impairments is severe. 20 C.F.R. §§ 404.1520(b) and (c), 416.920(b) and (c). If a claimant meets steps one and two, there are two ways in which he may be found disabled at steps three through five. At step three, he may prove that his impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(d). If so, the claimant is presumptively disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). At step four, the ALJ determines whether a claimant's RFC precludes him from performing his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant number in the national economy, considering the claimant's RFC, age, work experience, and education. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

### B. The ALJ's Application of the Five-Step Evaluation Process

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 18.) At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar and cervical spine; status post fusion of C7-T1 vertebrae (20 CFR 416.920(c))." (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (Tr. 19.)

The ALJ found that Plaintiff had the RFC to perform "light work as defined in 20 CFR 416.967(b)" with numerous qualifiers. (Tr. 20.) Notably, the ALJ concluded that

1    Plaintiff could carry up to ten pounds continuously, eleven to twenty pounds frequently,

2    and twenty-one to fifty pounds occasionally.  (*Id*.)  The ALJ found that Plaintiff could sit,

3    stand, or walk up to two hours at a time for a total of eight hours in an eight-hour

4    workday.  (*Id*.)  The ALJ found that Plaintiff could occasionally reach overhead and

5    could reach in all other directions and push and pull continuously.  (*Id*.)  The ALJ further

6    found that Plaintiff could "continuously handle, finger, or feel."  (*Id*.)

7        The ALJ concluded that Plaintiff could not perform his past relevant work but that,

8    considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform

9    other work that existed in significant numbers in the national economy.  (Tr. 24-25.)

10   Therefore, the ALJ concluded that Plaintiff was not under a disability as defined in the

11   Act since July 12, 2013, the date Plaintiff filed his application, and denied his application

12   for SSI.  (Tr. 26.)

13   **V.    Standard of Review**

14       The district court has the "power to enter, upon the pleadings and transcript of

15   record, a judgment affirming, modifying, or reversing the decision of the Commissioner,

16   with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The district

17   court reviews the Commissioner's final decision under the substantial evidence standard

18   and must affirm the Commissioner's decision if it is supported by substantial evidence

19   and it is free from legal error.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996);

20   *Ryan v. Comm'r of Soc. Sec. Admin*., 528 F.3d 1194, 1198 (9th Cir. 2008).  Even if the

21   ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are

22   harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

23       Substantial evidence means more than a mere scintilla, but less than a

24   preponderance; it is "such relevant evidence as a reasonable mind might accept as

25   adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

26   (citations omitted); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  In

27   determining whether substantial evidence supports a decision, the court considers the

28   record as a whole and "may not affirm simply by isolating a specific quantum of

1  supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal

2  quotation and citation omitted). The ALJ is responsible for resolving conflicts in

3  testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*,

4  53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to

5  more than one rational interpretation [the court] must defer to the ALJ's conclusion."

6  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing

7  *Andrews*, 53 F.3d at 1041).

8  **VI.    Plaintiff's Claims**

9  Plaintiff raises the following claims: (1) the ALJ erred by assigning little weight to

10  the opinion of examining physician Dr. Kahn and instead assigning great weight to the

11  opinion of examining physician Dr. Cunningham; and (2) the ALJ erred by failing to

12  provide clear and convincing reasons for rejecting Plaintiff's symptom testimony.

13  (Doc. 11 at 1.) The Commissioner asserts that the ALJ's decision is free from harmful

14  error and is supported by substantial evidence. (Doc. 17.) As set forth below, in

15  addressing Plaintiff's first claim, the Court concludes that the ALJ erred by failing to

16  provide Dr. Cunningham with Plaintiff's medical records in violation of 20 C.F.R

17  § 416.917. The Court reverses the ALJ's decision based on that error and does not reach

18  Plaintiff's remaining claims.

19  **A.    The ALJ Considered the Medical Record**

20  In the discussion of his first claim, Plaintiff argues that the ALJ's assessment of

21  Plaintiff's RFC is flawed because it was not based on "careful consideration of the entire

22  record," but instead simply incorporated the limitations Dr. Cunningham assessed.

23  (Doc. 11 at 12; *compare* Tr. 560-66 *with* Tr. 20.) The ALJ stated that he assigned "great

24  weight" to Dr. Cunningham's opinion and "incorporated it into [Plaintiff's] residual

25  functional capacity." (Tr. 23.) The regulations provide that an RFC is formulated based

26  on consideration of "all the relevant medical and other evidence." 20 C.F.R.

27  § 416.945(a)(3). Therefore, Plaintiff argues that because the ALJ incorporated

28  Dr. Cunningham's assessment of Plaintiff's physical limitations into the RFC, the ALJ

1    did not appropriately consider the medical record in determining the RFC. (Doc. 11 at 12

2    and n. 10.)  Although the ALJ admittedly adopted Dr. Cunningham's assessed limitation

3    (Tr. 23), he also considered other evidence in the record before doing so, including the

4    medical records.  (Tr. 19 (discussing the medical records).)  Therefore, the Court rejects

5    Plaintiff's claim that the ALJ erred by failing to consider the medical record.

6    **B.    The ALJ Failed to Comply with 20 C.F.R. § 416.917**

7    In the discussion of his first claim, Plaintiff also argues that the ALJ failed to

8    comply with 20 C.F.R § 416.917 because the ALJ ordered a consultative examination,

9    but the consultative examiner, Dr. Cunningham, was not provided with any of Plaintiff's

10    medical records.  (Doc. 11 at 12-14.)  The Commissioner does not dispute Plaintiff's

11    assertion that the ALJ did not provide Plaintiff's medical records to Dr. Cunningham, and

12    does not directly address the ALJ's alleged violation of § 416.917.  (Doc. 17 at 6-7.)

13    Rather, the Commissioner argues that the Court should reject Plaintiff's claim because a

14    "consultative examiner is not legally obligated to review a claimant's medical records."

15    (Doc. 17 at 6.)  As set forth below, the Court concludes that the ALJ erred by failing to

16    provide Plaintiff's medical records to Dr. Cunningham.

17    Pursuant to 20 C.F.R. § 416.917, consultative examiners must be provided with

18    "any necessary background information" concerning a claimant's condition.[4]  The phrase

19    "necessary background information" has been interpreted to mean medical records.  *See*

20    *Brantley v. Comm'r of Soc. Sec.*, 637 F. App'x. 888, 894-95 (6th Cir. 2016) (citing Soc.

21    Sec. Admin., POMS Home, https://secure.ssa.gov/apps10 (last visited Oct. 15, 2015)).

22    Additionally, the parties' briefing assumes that "necessary background information"

23    includes medical records.  (Doc. 11 at 12-14, Doc. 17 at 6-7.)  On referral from the ALJ,

24    Dr. Cunningham conducted a consultative examination of Plaintiff on May 12, 2105.

25    (Tr. 558-566.)  The parties do not dispute that Dr. Cunningham was not provided with

26    Plaintiff's medical records.  (Doc. 11 at 12-14, Doc. 17 at 6-7.)

27

28    _____
     [4]  20 C.F.R. § 404.1517 contains the same requirement.

1  Plaintiff relies on *Reed v. Massanari*, 270 F.3d 838, 842-43 (9th Cir. 2001), and

2  argues that the ALJ's failure to provide Dr. Cunningham with Plaintiff's medical records

3  violated the ALJ's obligation to provide "necessary background information" and

4  constitutes reversible error. (Doc. 11 at 12-14.) In *Reed*, the court noted that although a

5  claimant has the burden of establishing disability, the "'ALJ has a duty to assist in

6  developing the record.'" *Reed*, 270 F.3d at 841 (quoting *Armstrong v. Comm'r of Soc.

7  *Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998)). A consultative examination, which is a

8  physical or mental examination at the agency's request and expense, is "[o]ne of the

9  means available to an ALJ to supplement an inadequate medical record . . . ." *Reed*, 270

10 F.3d at 841 (citing 20 C.F.R. §§ 404.1519, 416.919). Although a claimant does not have

11 "an affirmative right to have a consultation performed by a chosen specialist . . . , the

12 agency's actions with respect to consultative examinations must be taken in accordance

13 with regulatory procedures." *Reed*, 270 F.3d at 842-43 (citing *Andriassian v. INS*, 180

14 F.3d 1033, 1046 (9th Cir. 1999)).

15 In *Reed*, the ALJ acknowledged that a consultative examination from a

16 rheumatologist would have been appropriate, but chose not to order an examination

17 because he believed that both of the available examining physicians with the appropriate

18 specialization routinely "conclude that 'everybody' is disabled." *Reed*, 270 F.3d at 843.

19 The claimant argued that the ALJ exhibited bias when he denied her request for an

20 additional consultative examination by a rheumatologist. *Id*. at 840. Because there was

21 no evidence to support the ALJ's conclusion about the available examining physicians,

22 the court found that the ALJ's "ad hoc" disqualification of the only two available

23 rheumatologists "exceed[ed] the ALJ's authority in the disability determination process."

24 *Id*. at 844 (noting that the record was "barren" of "analysis from other medical

25 professionals" and thus lacking the criterion upon which the decision to appoint a

26 consultative examiner "turned."). The court found the ALJ's "reason for denying [the

27 claimant] a consultative examination was not in accordance with law," and reversed and

28 remanded for further proceedings before a different ALJ. *Id*. at 845.

The Commissioner does not discuss *Reed* and does not directly address Plaintiff's assertion that the ALJ erred by failing to provide Dr. Cunningham with Plaintiff's medical records. (Doc. 17 at 6-7.) Rather, the Commissioner argues that the ALJ did not err by relying on Dr. Cunningham's opinion, which he formed without reviewing Plaintiff's medical records, because Dr. Cunningham was not required to review those records. (Doc. 17 at 6 (citing *Castaneda v. Astrue*, 344 F. App'x 396, 398 (9th Cir. 2009) (holding that ALJ did not err in relying on the report of a consultative examiner who did not review a previous MRI record because the examiner's report rested on his own independent examination of plaintiff); *Anderson v. Astrue*, 2009 WL 3297247 (W.D. Wash. Oct. 14, 2009); *Fortes v. Astrue*, 2009 WL 734161, at *3 (S.D. Cal. Mar. 18, 2009) (ALJ did not err in relying on a report from a consultative examiner who failed to review claimant's medical records because the examiner obtained a medical history from plaintiff and performed his own orthopedic examination.)).

These cases are not persuasive. The Commissioner cites these cases for the proposition that "[a] consultative examiner is not legally obligated to review a claimant's medical records." (Doc. 17 at 6.) Plaintiff, however, does not assert that § 416.917 obligates the consultative examiners to actually review the relevant medical records. (Doc. 11 at 12.) Instead, Plaintiff argues that the applicable regulation requires the ALJ to provide the consultative examiner with the claimant's medical records. (*Id.*) None of the cases the Commissioner cites addressed whether the ALJ's failure to provide medical records to a consultative examiner, in violation of § 416.917, constitutes reversible error.

A federal agency is obligated to adhere to the regulations it promulgates. *See Sameena, Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) (citing *Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959)). In this case, the Court concludes that the ALJ violated the applicable regulation, § 416.917, by failing to provide Dr. Cunningham with Plaintiff's medical records. *See Brantley*, 637 F. App'x at 894-97 (concluding that the ALJ violated § 416.917 by failing to give a consultative examiner the claimant's medical records and remanding for further proceedings.).

1    The Commissioner states that Dr. Cunningham obtained a medical history from
2  Plaintiff and "performed his own physical examination." (Doc. 17 at 7.) Although this
3  statement suggests that the ALJ's failure to comply with § 416.917 was harmless error,
4  the Commissioner does not make that argument. (*Id.*); *see Robbins v. Soc. Sec. Admin.*,
5  466 F.3d 880, 885 (9th Cir. 2006) (stating that the court will not reverse the
6  Commissioner's decision if it is based on harmless error, which exists only when it is
7  "clear from the record that an ALJ's error was 'inconsequential to the ultimate
8  nondisability determination.'") (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th
9  Cir. 2006)). Plaintiff asserts that the ALJ's failure to provide Dr. Cunningham with his
10  medical records was reversible error because his medical records include evidence of
11  significant findings on testing, including an MRI, after his C7-T1 fusion. (Doc. 11 at 13-
12  14 (citing Tr. 452, 539).) Plaintiff's argument invites the Court to assume that reviewing
13  the medical records would have affected Dr. Cunningham's assessment of Plaintiff's
14  physical limitations. The Court, however, cannot determine whether reviewing
15  Plaintiff's medical records would have affected Dr. Cunningham's opinion.

16    Nonetheless, courts have found the agency's failure to comply with its own
17  regulations prejudicial. *See Reed*, 270 F.3d at 843; *see also Wilson v. Comm'r of Soc.*
18  *Sec.*, 378 F.3d 541, 46 (6th Cir. 2004) (concluding that excusing noncompliance with
19  agency regulations "simply because there is substantial evidence that a different outcome
20  on remand is unlikely . . . would afford the Commissioner the ability [to] violate the
21  regulation with impunity and render the protections promised therein illusory" and
22  remanding to the Commissioner for further proceedings); *Deden v. Colvin*, 2013 WL
23  6189954, at *5 (C.D. Cal. Nov. 26, 2013) (noting that "background information is
24  essential, because consultative exams are utilized 'to try to resolve a conflict or ambiguity
25  if one exists.'") (quoting 20 C.F.R. §§ 404.1519a(b), 416.919a(b)). Therefore, the Court
26  concludes that the ALJ violated § 416.917 by failing to provide Dr. Cunningham with
27  Plaintiff's "necessary background information," specifically his medical records. The
28  Court reverses the ALJ's decision based on this error.

**VII. Conclusion and Remedy**

Because the Court has decided to reverse the Commissioner's decision, it has the discretion to remand the case for further development of the record or for an award benefits. *See Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998). When no useful purpose would be served by further administrative proceedings, or when the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").

However, when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*; *see Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (stating that evidence should be credited as true and an action remanded for an immediate award of benefits when each of the following factors are present: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant's testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.").

In this case further administrative proceedings to develop the record would be helpful because Dr. Cunningham did not have the opportunity to review Plaintiff's medical records when he examined Plaintiff and when he provided an assessment of Plaintiff's physical functional limitations. *See* 20 C.F.R. § 416.917. The Court, therefore, remands for further proceedings to allow the ALJ to remedy the error identified in this Order.

Accordingly,

1    **IT IS ORDERED** that the Commissioner's decision is **REVERSED** and this

2  matter is **REMANDED** for further proceedings.

3        Dated this 8th day of June, 2018.

4

5

6

_____

7                             Bridget S. Bade
                      United States Magistrate Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28